18-3-003. Ms. Capwell? Yes, good morning, your honors. May it please the court, Kerry Capwell for the government. We raised two principal issues in our brief. We first asked this court to find that the district court clearly erred in its factual finding that the AUSA, during a five-minute conversation with a witness's counsel, issued a veiled threat to that witness to not testify in her case where she would get in his way in his pending matter. And I will return to that argument in a moment. Second, and in the alternative, we asked this court to find that the district court abused its discretion in dismissing this case, dismissing the indictment, with prejudice. That was an extreme and severe remedy here. And the Supreme Court in this court has explained that the remedy must be tailored to the alleged injury, even where the violation is alleged to be a constitutional one. And that the district court must consider less extreme alternatives and must also explain why those less extreme alternatives are not a viable remedy or why they would not suffice to protect the defendant's rights. And here, the district court failed to consider a variety of less severe sanctions, such as having – yes, your honor. No, I just cleared my throat. Sorry. And those would be having a retrial after the witness's pending case in the Western District of Missouri had been finally resolved. She could have also had the retrial after that witness's case was over and could have also precluded the government from asking that witness any questions about his Western District conviction or case. And also, a less severe sanction could have been to preclude the government from calling one of its cooperating witnesses, Alejandro Ruiz, which then would have made the defense witness's testimony moot and unnecessary. So let me turn back to the first issue that we raised in this case, which is that the district court clearly erred in its factual finding that the AUSA issued a veiled threat to the witness's defense counsel to keep him from testifying. One of our main sub-arguments is that this was error because the district court found that the consequences that the AUSA issued were for the mere act of testifying. And that is not supported by the totality of the record. There were only two parties to the conversation between the AUSA and the witness's attorney. The attorney's name was Tracy Spradlin. And their descriptions of the conversation are in our reply brief, pages 11 to 13, in a chart. And that sets out the various descriptions of that five-minute conversation. And they were the only two people privy to that conversation. And from this, we know the AUSA in open court said to the district court in describing that conversation that she discussed with Ms. Spradlin the fact that her client had open charges in the Western District of Missouri. And also that if he were to testify at Mr. Orozco's trial, he could face consequences if he committed perjury. Now, the district court turned to Ms. Spradlin. Didn't she say if he testified? Your Honor, she said in open court, and I'm just going to look to make sure I get it absolutely right, we discussed the fact that if he was found to be lying under oath, that there would be perjury consequences. So that was the AUSA's description in open court to the district court judge about the conversation. But that was not Spradlin's testimony? That was the AUSA. And then the district court did turn to Ms. Spradlin because Ms. Spradlin was in the courtroom at the time and heard what the AUSA said. And the district court asked Ms. Spradlin, is there anything you would like to add to that? And Ms. Spradlin said no. And then about three months later, in relation with the Rule 33 motion in the hearing, Ms. Spradlin did provide an affidavit. And in that affidavit, she said that the prosecutor did tell her that Mr. Salazar could be charged with perjury should he testify. So, again, the consequence there is if he commits perjury, then he could be prosecuted for that.  She also said in her affidavit that Ms. Moorhead did advise me she was aware of Mr. Reese Salazar's current indictment and which western district AUSA was handling that indictment. Yes, Your Honor. And that is exactly what I was about to say. Okay. And isn't that what the district court found to be a veiled threat? That was part of it. I think it was the focus on the mentioning of knowing which AUSA in the other district was handling that case. So that went into the district court's analysis. Now, Ms. Spradlin did make clear in her affidavit that other than what she had stated in her affidavit, she could not recall the conversation with enough detail to state anything else. So Ms. Spradlin in her affidavit says nothing about threats or consequences for anything other than committing perjury. And then when Ms. Spradlin testifies at the Rule 33 hearing, and she's cross-examined, or she's actually direct questioning by defense counsel in this case about the ramifications, she answers and says, it was just discussed that, and this is kind of paraphrasing that ramifications against Ruiz was a strong possible outcome. And it was clear error for the district court to assume that the ramifications discussed there were anything other than perjury ramifications, because the only evidence in the record related to perjury consequences. And Ms. Spradlin at no point contradicts that or states that there had been any kind of discussion other than if he testifies and commits perjury, that's something that he may have to face consequences for. And didn't Ms. Spradlin also say that she didn't think that what was said was confrontational? Yes, correct, Your Honor. She said it was not confrontational. She said the AUSA was assertive. And that's how she described the conversation, and she said it lasted five minutes or less, so this was a short conversation that they had. Did Moorhead tell Spradlin this, if Ruiz Salazar gets in my way, I'm going to get in his way? There is no evidence in the record from Ms. Spradlin, who was the only other person who took part in this conversation, to that. And so that does take me directly to my next argument. Thank you, Judge, that the district court clearly erred by relying on triple hearsay and unreliable testimony from the defendant and from Mr. Ruiz Salazar. Because for the district court to find that the AUSA issued a threat of getting in his way if he gets in my way, that had to come from the defendant and Ruiz Salazar's testimony. It could not have come from Ms. Spradlin because Ms. Spradlin never testified to that. Now let me address why this was an abuse of discretion. Can inference be drawn from what Ms. Spradlin testified? From proven facts. So from proven facts from what Ms. Spradlin testified to, the court can draw reasonable conclusions. But we argue here that the inferences that the district court drew were not reasonable and were not plausible when viewed in the context of the entire trial or the entire hearings related to this matter here. Because how Ms. Spradlin described their conversation related to perjury consequences. If she had been threatened in any other way or Ms. Moorhead had said to her, if your client gets in my way, I'm going to be getting in his way both here in Kansas and in Missouri, surely that would have been a memorable event that would have been in Ms. Spradlin's affidavit. And Ms. Spradlin clearly states in the affidavit, other than what I've stated in my affidavit, I don't have enough of a recollection to tell you anything else. Maybe she subsequently recollected. No, she didn't add really anything much more when she testified the next day. So she provided the affidavit and then the next day she testified. Did anybody ask her what she had told her client? Well, Your Honor, they were maintaining the attorney-client privilege. So I think there might have been some discussion on the record before she testified about the fact that she would not be, that he was maintaining his attorney-client privilege to their conversations and that she would not be testifying to what happened during that conversation. And similarly, when Ruiz Salazar testified at the second Rule 33 hearing, he did not testify about what he and Ms. Spradlin discussed. So there's no evidence from Mr. Ruiz Salazar as to what happened during that conversation. But are there just objective facts? Was he going to testify? Was he on a witness list and had he been called? He said that he was going to testify and then he was brought into court. The court had a call with him. He went back. And then Ms. Spradlin and the AUSA spoke. And then Ms. Spradlin spoke to Mr. Salazar. She spoke. The AUSA spoke to Ruiz Salazar. No, I'm sorry. If I said that, I misspoke. The AUSA only spoke to Ms. Spradlin. Correct. And then the record shows that Ms. Spradlin had another conversation with her client. We don't know what they talked about during that conversation. And after that, Ms. Spradlin advised, I believe it was defense counsel, that her client would no longer be testifying. But he would not testify. Would not be. So something happened, right? There was a conversation. Between the cup and the lip. Between the time that he was there to testify and after this conversation, whatever took place, he didn't testify. He didn't testify. So she gave him presumably advice. So there was some strong circumstantial evidence that something was said. Something was said. He decided not to testify. The only thing he said during his Rule 33 testimony about their conversation was my attorney and I talked that it wasn't like right at that moment. So that's the only thing he says about their conversation. His other testimony relates to what he said. What would she have meant by that other than this AUSA is threatening to get you in your pending case? Your Honor, respectfully, I think that's a leap to make that assumption that that is what Ms. Spradlin advised. She could have just advised him, I've thought about this more. It's true that if you take the stand, you could open yourself up to perjury. You're going to be cross-examined by a prosecutor. You might say something that could then affect your pending case in the Western District of Missouri and could affect you in Kansas. And I don't think that risk is worth it here for you to testify in somebody else's case. So we don't know. There's no evidence in the record about what was said during that conversation. Well, there is, except that there is Spradlin's recollection of it, isn't there? No. Of the conversation, I'm sorry, yes, with the AUSA. But there's no evidence in the record about what Spradlin said to her client because they maintain the attorney-client privilege. And I do want to reserve a little bit of time. Let me ask you one quick question. Was this witness's testimony material to anything? I mean, it was about who sold the car, whether it was one Ruiz Salazar or somebody else Salazar. Yes, Your Honor. So it was going to be about the car transaction, and it was going to also be about who had the friendship with the defendant. Was that really relevant? I mean, the only relevance was that it would serve to impeach one of the government's cooperating witnesses. Who said he was a friend and he sold the car. He sold the car, right. And that he had a friendship with the defendant. I don't even think that the cooperator testified he had a friendship. He provided him drugs. He was his drug supplier. So I don't think it was really about a friendship. It was just about, I'm your drug supplier. And so Ruiz Salazar was going to state that, no, he had a relationship with the defendant and not his brother. But really, the only purpose it would serve would be impeachment on two pretty minor points, tangential points. From the defense counsel's view, I'm sure it was important because any impeachment is helpful. But I do want to say. But the result was the defendant had to testify. I'm sorry? The result was the defendant felt compelled to testify. That's what he stated on the record, that he felt that he had to testify because his witnesses did not testify for him. And there was another witness who decided also to take the fifth, who also had pending charges. And let me quickly, before I sit down, I just do want to emphasize that when the defendant testified at the Rule 33 hearing, his testimony was based on triple hearsay and contained indisputably either a lie or a material misstatement because he testified that Ruiz Salazar said to him in the van that the AUSA had spoken directly to Ruiz Salazar. And nobody here is going to say that that's correct. That was wrong. But didn't you just misspeak a few minutes ago? People do that. It could have been a misstatement, but that just also shows that his testimony, because it was layer upon layer of AUSA to Ms. Bradlen, Ms. Bradlen to Ruiz Salazar, Ruiz Salazar to the defendant, that in there, there was a mistake, there was a lie, there was misrepresentation, and the fact is the defendant wasn't party to that conversation. May I reserve? Does hearsay even apply in this type of a proceeding? Your Honor, it's unclear if it would apply because it's a hearing, but certainly it goes to show that it was unreliable. So if I may, I will. We'll extend a minute of additional time to both sides. Thank you very much, Your Honor. Thank you, counsel. Thank you. Good morning, Your Honor. Good morning. May it please the Court. The factual findings made by the district court must be used by this court unless they are found to be clearly erroneous. This court has emphasized that to be clearly erroneous, a finding must be more than possibly or even probably wrong. The error must be pellucid to any objective observer. You know what troubles me is that, and I'm sure you have done this before, you've counseled your clients who might be witnesses that if they don't tell the truth, they could be charged with perjury. Accurate. Now, that is not threatening somebody or depriving them of the right to call witnesses, is it? It is not. And don't we have a sort of a he said, she said situation here where an experienced defense attorney, Ms. Bradleyn, said that she didn't think it was confrontational and it was assertive and that it was pretty clear, it seemed to me, that what she was told was if this guy testifies in lies, I'm going to go after him for perjury. That is not what the district court found. I know that's not what the district court found. But isn't that essentially, I mean, if I was the defense attorney and somebody had told me I don't care what he says, I'm going to go after him for perjury, I would not forget that even if it was three years later. And if somebody asked me, did the U.S. attorney threaten your client? Yes, yes, he did. Yes, she did. And I told him. But that didn't happen here. She didn't remember anything. In this particular circumstance, the findings of the district court were that the threat made by the assistant U.S. attorney went beyond that simple perjury. I know, but there was no evidence to that effect. There was evidence to that effect. There was evidence that Spradlin testified directly. It was discussed that it was a strong possibility that ramifications could occur. But it was to the lawyer, and one lawyer to another is not going to suggest, you mean regardless of what he testifies to? Of course not. There was additional information available for the court to go from. The reason that Ms. Spradlin talked to Ms. Moorhead to start with was Ms. Moorhead wanted to talk to Mr. Ruiz. And she got permission to do it, too. She got permission to do it. But she never did it. No. Then all she wanted to do, it was very clear that she intervened, and what she wanted to do was convey a threat to Ms. Spradlin and never talk to Ruiz. Well, if the threat was if you perjure yourself, I'm going to go after you for perjury. That's not a threat. That's a fact. The findings of the district court were that if he testified that Ms. Moorhead conveyed that, if he testified I'm going to come after him, that if you get in my way, I will get in his way. I understand that. The district court found that was above and beyond. And the ASA was talking about not a perjury conviction in this case, but what's going to happen to you in your pending case in the Western District of Missouri, right? Correct. There was additional evidence that was provided, that was entered in, that Ms. Moorhead said, I know the prosecutor in your case, that I can interfere with your prosecution in your other matter. And, again, then failed to ever actually go interview Ruiz. All Ms. Moorhead designed to do, apparently, was to go make sure that Ruiz didn't testify. That testimony, the court also found, would have been material. In this case, the indictment charged four counts. Two of those counts, the defendant was found not guilty. Of the firearm charges. Right, of the firearm charges. That the district court did hear that case. The district court went through that case. The district court heard that testimony of Alejandro Ruiz and specifically found that the testimony of Jose Ruiz would have been material and would have been important to that case. And by being dissuaded to testify, by being threatened, that it did impact the case against Mr. Orozco. In any matter where we have a clear error, the trial judge is the one who is aware of the variations and demeanors and the tone of voice that bear heavily on the listener's understanding of and belief in what is said. Therefore, it is up to the district court to make those findings a fact. In this case, the district court had heard an entire trial. The district court had heard all of the testimony given. Had heard the testimony at the Rule 33 hearing relative to Ms. Spradlin, from Mr. Ruiz, and also from the defendant, Mr. Orozco. Based upon that, the court made an extraordinary number of factual findings that occurred in this case. We have the matter where, well, if we take the district court at her face, this is an extraordinary case in that you have, from that, her perspective, an overzealous prosecutor who actually asked to speak to somebody's client directly. Is that, do I understand that correctly? Accurate, yes. No, that's not correct. It was the witness that she was going to speak to, not a defendant in that case. No, I understand. But the client of the lawyer. Accurate. It was the witness. Accurate. Mr. Ruiz. The witness had a lawyer. Accurate. And the AUSA is asking to speak to that lawyer's client directly. Accurate. And the court gave permission for that, correct? They did. However, Ms. Moore had never availed herself of that. Well. She just went and made the threat to Ms. Spradlin and then continued on. I believe the court brought up during the government's arguments originally that Mr. Jose Ruiz came in and was on the stand and testified about what was going to happen. The judge had specifically limited the areas about what could be addressed. In other words, as far as his pending case and his rights under the Fifth Amendment to the United States Constitution. There was a very limited area that the court had said can be discussed. And Mr. Ruiz stated specifically and repeatedly that he wanted to testify. There is some intervening action and within a few moments that decision was changed. I believe the court addressed this. And as you set below the sign that says reason is the soul of all law, that something occurred within that that changed Mr. Jose Ruiz's mind. And the evidence that we have and the evidence that the district court made determinations upon were the fact that Ms. Spradlin said she felt there would be strong ramifications. That Ms. Moorhead had specifically said I know the prosecutor in your case. And the court discerned therefrom and made additional factual findings based upon that. And presumably, sort of in response to Judge Kelly's question, he had already been advised by his attorney before he took the stand that if he committed perjury he could be charged. Accurate. And the judge's determination, the factual finding here was not that he was advised if he committed perjury he could be prosecuted. He was advised that if he testified that there would be ramifications. Ms. Spradlin didn't state that on the record. No, Ms. Spradlin did not. But the judge made factual findings based upon the totality. The judge made that, again, in addition to all of the other statements and the other actions of the U.S. attorney involved in the case, including those she listed relative to mischaracterization of Brady material, late admission of Brady material. The fact that she intended, she stated her intent was to interview a witness when in fact she didn't want to interview the witness. That she simply made a statement to Ms. Spradlin so that the witness would not testify. The court made those factual findings and made very clear factual findings throughout a very extensive decision here that determined that Mr. Orozco was denied his right to a fair trial. In this matter, we have additional factual findings that the degree and kind of warning made to Ms. Spradlin to be conveyed to Mr. Jose Ruiz by Ms. Moorhead was substantial. That the testimony that would have been given by Mr. Ruiz was material and was relevant. And we have the situation where we addressed the web test that the court went through in determining whether there was a violation to a degree that would necessitate the granting of a motion for new trial. Here the court went through an extended finding. I would also point out that part of the web testing is whether or not the witness consulted an independent lawyer before refusing to testify in the case. The court did find that Mr. Ruiz did in fact have Ms. Spradlin representing him in this matter. However, in this particular circumstance, Ms. Spradlin then became the mechanism to convey the threat. As the government has indicated, as the court has pointed out, Ms. Moorhead never actually spoke directly with Mr. Ruiz. The threat was conveyed through a third party and that third party conduit was in this fact Ms. Spradlin. But did Ms. Spradlin actually testify to the things that the district court found? That is, he gets in my face, I'm going to get in your face, and those kinds of direct findings. I don't believe Ms. Spradlin testified to that. Or inferences. Or did the court say this is an inference that I'm drawing? The court found that she had heard the testimony of Ms. Spradlin. She had heard the testimony of Mr. Ruiz. She had heard the testimony of Mr. Orozco. And based upon the totality of the circumstances, she believed that that had occurred and made that factual finding. And the assistant U.S. attorney was not put on the stand in the evidentiary hearing? No. Where everybody else testified? No. There was the arguments made by the government in this case relative to Ms. Moorhead's statements are merely argument that she made before the court. She never testified. Has Moorhead actually ever tendered an affidavit? No. Nothing. Merely speculation and argument were given by the government. Again, based upon those extended factual findings made by the court, I'm sorry. I have a question. How does this impact count two? Count two was the possession charge, the possession with intent to distribute charge. If you had a retrial and you didn't put the guy on the stand, Alejandro, whatever his name was, how does that, that would impact the conspiracy? But how does it impact count two? In this particular circumstance, the jury specifically found that a gun that was discovered at the same time as the methamphetamine that was used as the basis for count two and found that my client was not in possession of that and found him not guilty of that charge. So clearly there was a very subtle determination to that situation and how close that might have been. Further, because my client was forced to testify because he was not given his witnesses. But he wouldn't be forced to testify in a second trial if they didn't put that guy on the stand. Potentially, maybe not. But when he was required to testify in this case, then his entire history came in, including his prior drug felonies. That goes to, that doesn't undermine granting a new trial instead of dismissing the indictment with prejudice if he's not forced to testify in the second case. Potentially. The court did not find that was an available alternative. Because of the other matters that were taken care of. Because of the Brady material that was neglected. Because of the additional prejudice to my client. Because of the other. Of course, in a new trial, he'd have the Brady evidence and everything else at the beginning of a new trial. We would. However, that Brady evidence being released late did prejudice him and being in custody for another two months awaiting trial. It also did not give us the opportunity to investigate that Brady material. But you could if there were a retrial. This goes to remedy. To a degree, it does. And I understand you're going to remedy at this point in time. But those were still difficult things. Also, the fact that Ruiz Salazar was threatened in this case certainly isn't going to be remedied by the fact that we would have a new trial. Hasn't he already been tried and sentenced in Western District of Missouri? I believe so. But at the same point in time, that's a bell you can't unring. The government did threaten him. He was willing and available to testify at that time. There is no indication that he would ever do that again. What is the relief that Judge Robinson gave? She dismissed the indictment with prejudice. Thank you. And she did that based upon the litany of other clients. But with prejudice. She ended the case. She did. And for many of the reasons set out as well as others that she discussed in her decision that were set out in detail. Again, other facts. Remind me, did you set forth in your brief any argument about the powers of a trial judge in the supervision of the trial, in the supervision of counsel appearing at the trial, et cetera? I believe so. I'm about out of time. Does the court have anything further? I don't want to cut you off, but I just want you to acknowledge that. If there's nothing further, we believe that the district court's decisions here should be fully affirmed, and we ask the court to take that action. Thank you for your time this morning. Thank you. Counsel, you have additional time. Thank you very much, Your Honors. Just a few quick points. The Ruiz's, both Alejandro and Jose, really had nothing to do with count two. Alejandro was no longer supplying the defendant. So, count two is an independent count. And this also goes to remedy. So, one of the less severe remedies could be a retrial on count two. Don't need Alejandro for count two. He's irrelevant. Don't need Jose Ruiz for count two. So, that right there would be a less severe sanction, which would be fair and would accomplish all the goals of the district court. Also, when Ms. Fradlin stated in her affidavit that Ms. Moorhead did advise me that Mr. Ruiz could be charged with perjury should he testify, this was conditional. He could be charged. She didn't say that Ms. Moorhead told me he absolutely will be charged if he testifies. It was a conditional statement. He could be charged if he testifies. And implicit in that is... Well, but why would she say that to... A lawyer should know that. Yeah. I mean, it's like... I'm not going to tell Judge Seymour if somebody lies in court, they can be cited in for perjury. I mean, why would I say that? I mean... Yes, Your Honor. Any lawyer would know that. I understand, Your Honor. And I don't know what was in the AUSA's head at the time. I will tell you there are several circuit court decisions that state there is nothing impermissible about a judge or an attorney warning a witness or a witness's counsel that perjury is a possible consequence. Which they ordinarily do. But she used the word testify, according to Spradlin's affidavit. Yes, Your Honor. And our argument would be looking at that in context with what the AUSA said in open court earlier, where Ms. Spradlin did not have any contradiction to what the AUSA said, that if he should testify, meaning if he testifies and commits perjury, it would be simply for testifying. Well, so even so, in this context, and you read the whole affidavit, if she said testify, the next part of the affidavit, Ms. Moorhead did advise me that she was aware of Mr. Rial's current indictment and which Western District AUSA was handling that indictment, which goes to the veiled threat. So it could be testify in these circumstances. Your Honor, we — Depends on what inferences you draw, right? Yes. And, Your Honor, here we think that would be an impermissible inference based on the record in full. I see that I am out of time. I would just ask this Court to please reverse and vacate the district court's decision and reinstate the convictions. And the alternative, please reverse the remedy here and allow a retrial. Thank you. One quick question on that point. Yes, Your Honor. Does the district court have the power as a sanction, if in fact she had the power to make these findings that she did, to reach out and also affect the second count on that kind of a basis as sanctions? I believe, Your Honor, as long as the district court has factual findings that there was prejudice to the defendant on that second count, then I believe it's within the district court's jurisdiction. Well, what if she says I did prejudice, no prejudice, this conduct was so egregious I'm not allowing a case dismissed? I believe, Your Honor, that the cases from the Supreme Court and this circuit require prejudice in order for complete dismissal, even under a district court supervisory power. Well, if the defendant was prejudiced, if he'd gone to trial right then and there, who knows, assuming this evidence had gone in, what the jury would do? Your Honor, I guess I'll do my fallback argument, which was at a retrial, there are ways to have a retrial without these concerns. Thank you. Thank you for your time. Appreciate the time. Counselor excused.